JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PRIYA E. MAMMEN, M.D., M.P.H.

**DEFENDANTS**
THOMAS JEFFERSON UNIVERSITY; SIDNEY KIMMEL MEDICAL COLLEGE; JEFFERSON UNIVERSITY PHYSICIANS; & THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor, Philadelphia, PA 19102  215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

❏ 2  U.S. Government
Defendant

❏ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | New Drug Application | ❏ 470 Racketeer Influenced and |
| Student Loans | ❏ 340 Marine | Injury Product | | ❏ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | Exchange |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 893 Environmental Matters |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | ❏ 895 Freedom of Information |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party | Act/Review or Appeal of |
| ❏ 230 Rent Lease & Ejectment | ☒ 442 Employment | ❏ 510 Motions to Vacate | | 26 USC 7609 | Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | | ❏ 950 Constitutionality of |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | State Statutes |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

❏ 2  Removed from
State Court

❏ 3  Remanded from
Appellate Court

❏ 4  Reinstated or
Reopened

❏ 5  Transferred from
Another District
*(specify)*

❏ 6  Multidistrict
Litigation -
Transfer

❏ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq. ("Title VII"), 29 U.S.C. §2601, et seq. ("FMLA"); 43 P.S. §951, et seq. ("PHRA") Phila. Code §9-1101, et seq. ("PFPO")
Brief description of cause:
Plaintiff brings this action against her former employers for sex discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE
01/07/2020

SIGNATURE OF ATTORNEY OF RECORD
*Katherine C. Oeltjen*
Katherine C. Oeltjen, Esquire

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Philadelphia, PA 19147 _____

Address of Defendant: _____ 11th and Walnut Street, Philadelphia, PA 19107 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/07/2020  _____ *Katherine C. Oeltjen* _____  318037

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Katherine C. Oeltjen, Esquire _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 01/07/2020  _____ *Katherine C. Oeltjen* _____  318037

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

PRIYA E. MAMMEN,                              :                    CIVIL ACTION
M.D., M.P.H.        PLAINTIFF,                :
                                             :
THOMAS JEFFERSON UNIVERSITY; SIDNEY KIMMEL    :
MEDICAL COLLEGE; JEFFERSON UNIVERSITY PHYSICIANS;
& THOMAS JEFFERSOM UNIVERSITY HOSPITALS, INC.                     NO.
             DEFENDANTS.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                 (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                          (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                             (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                 ( X)

| January 7, 2020 | *Kathei C. Oeltjen* | Plaintiff, Priya E. Mammen, M.D. M.P.H. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | 215-565-2852 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **PRIYA E. MAMMEN, M.D., M.P.H.** | : | |
| **Philadelphia, PA 19147** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS JEFFERSON UNIVERSITY,** | : | |
| **11th and Walnut Street** | : | |
| **Philadelphia, PA 19107** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **and** | : | |
| | : | |
| **SIDNEY KIMMEL MEDICAL** | : | |
| **COLLEGE** | : | |
| **1025 Walnut Street** | : | |
| **Philadelphia, PA 19107** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JEFFERSON UNIVERSITY** | : | |
| **PHYSICIANS** | : | |
| **1025 Walnut Street** | : | |
| **Philadelphia, PA 19107** | : | |
| | : | |
| **and** | : | |
| | : | |
| **THOMAS JEFFERSON UNIVERSITY** | : | |
| **HOSPITALS, INC.,** | : | |
| **111 S. 11th Street** | : | |
| **Philadelphia, PA 19107** | : | |
| | : | |
| **Defendants.** | : | |

1

<u>**COMPLAINT**</u>

## I.   <u>INTRODUCTION</u>

Dr. Priya Mammen, M.D., M.P.H. ("Plaintiff") brings claims against her former employers, Thomas Jefferson University, Sidney Kimmel Medical College, Jefferson University Physicians and Thomas Jefferson University Hospitals, Inc. (collectively, "Defendants") for sex discrimination and retaliation after her wrongful termination on January 31, 2019.  Dr. Mammen is a nationally recognized emergency room physician and academic specializing in opioid addiction and the related impact on community/emergency medicine and other public health related issues. Despite her exemplary record of performance, Dr. Mammen was subjected to a hostile work environment and paid disparately compared to male physicians in her department, Emergency Medicine. When Dr. Mammen complained on behalf of herself and other female physicians experiencing similar treatment, she was retaliated against by Defendants and ultimately notified that her contract would not be renewed, telling Plaintiff she was not a "good fit." When Plaintiff sought employment within Defendants' organization outside of the Department of Emergency Medicine, Defendants failed to hire her, with Defendants' taking active steps to ensure that Plaintiff's efforts to find employment were "blocked." Plaintiff now brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA") and the Philadelphia Fair Practices Ordinance, Phila. Code §9-1101, *et seq.* ("PFPO"). Plaintiff seeks damages, including back-pay, front-pay, compensatory, liquidated and punitive damages, in addition to costs and attorneys' fees and all other relief that this Court deems appropriate.

2

## II.    **PARTIES**

1.        Plaintiff, Priya E. Mammen, is an individual and a citizen of the Commonwealth of Pennsylvania. She resides in Philadelphia, Pennsylvania.

2.        Plaintiff is female.

3.        Defendant Thomas Jefferson University ("Defendant TJU") is a private university organized under the laws of the Commonwealth of Pennsylvania. Defendant TJU has a headquarters and/or a principal place of business at 11th and Walnut Street, Philadelphia, PA 19107.

4.        Defendant Sidney Kimmel Medical College ("Defendant SKMC") is an operating unit of Defendant TJU and houses Defendant TJU's medical college. Defendant SKMC maintains a principal place of business across a thirteen-acre campus within Philadelphia's Center City, including administrative offices at 1025 Walnut Street, Philadelphia, PA 19107.

5.        At all times material hereto, Plaintiff was an "employee" of Defendants TJU and SKMC within the meaning of the statutes which form the basis of this matter.

6.        At all times material hereto, Defendants TJU and SKMC acted as "employer[s]" within the meaning of the statues which form the basis of the matter.

7.        At all times material hereto, Defendants TJU and SKMC employed more than fifteen (15) individuals.

8.        Defendants TJU and SKMC are engaged in an industry affecting interstate commerce, and, at all relevant times, have regularly conducted business in the Commonwealth of Pennsylvania.

3

9.      Defendant Jefferson University Physicians ("Defendant JUP") is a Pennsylvania corporation with its headquarters and/or a principal place of business located at 1025 Walnut Street, Philadelphia, PA 19107.

10.     Defendant JUP is the physician practice group for Defendant TJU and part of "Jefferson Health."

11.     At all times material hereto, Plaintiff was an "employee" of Defendant JUP within the meaning of the statutes which form the basis of this matter.

12.     At all times material hereto, Defendant JUP acted as an "employer" within the meaning of the statues which form the basis of the matter.

13.     At all times material hereto, Defendant JUP employed more than fifteen (15) individuals.

14.     Defendant JUP is engaged in an industry affecting interstate commerce, and, at all relevant times, has regularly conducted business in the Commonwealth of Pennsylvania.

15.     Defendant Thomas Jefferson University Hospitals, Inc. ("Defendant TJUH") is a Pennsylvania corporation with its headquarters and/or a principal place of business located at 111 S. 11th Street, Philadelphia, PA 19107.

16.     At all times material hereto, Plaintiff was an "employee" of Defendant TJUH within the meaning of the statues which form the basis of this matter.

17.     At all times material hereto, Defendant TJUH acted as an "employer" within the meaning of the statutes which form the basis of this matter.

18.     At all times material hereto, Defendant TJUH employed more than fifteen (15) individuals.

4

19.     Defendant TJUH is engaged in an industry affecting interstate commerce, and, at all relevant times, has regularly conducted business in the Commonwealth of Pennsylvania.

20.     Defendant TJUH held itself out as Plaintiff's employer. By way of example, during her employment, Plaintiff's email signature line included, "Priya Mammen, M.D., MPH, Clinical Assistant Professor, Department of Emergency Medicine, Sidney Kimmel Medical College, Thomas Jefferson University Hospital."

21.     In addition, Plaintiff appeared on Defendant TJUH's Facebook page under the heading of "Meet our Staff" and Defendant TJUH promoted Plaintiff and her work as demonstrative of the care provided by TJUH to its patients across its various social media platforms including Twitter, Facebook and YouTube.

22.     The Defendants do business, collectively and individually, under the marketing or "doing business as" name "Jefferson Health."

23.     At all times material hereto, Defendants have acted as a single employer, joint employers, and/or alter egos.

24.     The operations of Defendants are substantively consolidated.

25.     By way of example of Defendants' consolidated operations:

> a.  www.jeffersonhealth.org/index.html, or "Jefferson Health's" website contains information about all Defendants as part of a single, overall enterprise and links to various aspects of Defendant's collective business; and,
>
> b.  Dr. Stephen K. Klasko ("Klasko") serves in a leadership position over all Defendants. For example and without limitation, Klasko

5

serves as President of Defendant TJU and CEO of "Jefferson Health"; and,

c. The August, 2019 "We are Jefferson Enterprise Booklet" refers to and describes each of Defendants as being part of a single enterprise.

26.     At all times material hereto, Plaintiff worked out of multiple locations operated by Defendants across Philadelphia, PA.

27.     At all times material hereto, the Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with the Defendants and in furtherance of the Defendants' business.

## III.    <u>JURISDICTION AND VENUE</u>

28.     The causes of action which form the basis of this matter arise under Title VII, the FMLA, the PHRA and the PFPO.

29.     The District Court has jurisdiction over Count I (Title VII) and Count II (FMLA) pursuant to 28 U.S.C. §1331.

30.     The District Court has supplemental jurisdiction over Counts III (PHRA) and IV (PFPO) pursuant to 28 U.S.C. §1367.

31.     Venue is proper in this District Court under 28 U.S.C. §1391(b).

32.     On or about July 26, 2018, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation alleged herein ("Charge"). The Charge was cross-filed with the Equal Employment Opportunity

Commission ("EEOC").  Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the Charge filed with the PHRC (with personal identifying information redacted).

33.     On or about March 6, 2019, Plaintiff filed an Amended or Second Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation alleged herein ("Second Charge"). The Second Charge was cross-filed with the EEOC. Attached hereto, incorporated herein, and marked as Exhibit "2" is a true and correct copy of the Amended Charge filed with the PHRC (with personal identifying information redacted).

34.     On or about October 9, 2019, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto and marked as Exhibit "3" is a true and correct copy of the Notice (with personal identifying information redacted).

35.     Plaintiff has fully complied with all administrative prerequisites for commencement of this action.

## IV.     FACTUAL ALLEGATIONS

36.     Plaintiff began working for Defendants on or about August 25, 2012 as Clinical Assistant Professor.

37.     Throughout her employment, Plaintiff received consistently positive remarks on her Annual Departmental Reviews, was in good standing with the Department and Defendants' various institutions, was a member of Core Faculty for resident education, was appointed to the Department of Emergency Medicine Promotions Committee and was appointed to the Director's Council.

38.     By January 1, 2016, Plaintiff held the position of Emergency Physician, Clinical Assistant Professor, Director of Public Health Programs in the Department of Emergency Medicine in Sidney Kimmel Medical College at Thomas Jefferson University Hospital ("Emergency Physician").

39.     Plaintiff reported to Theodore Christopher ("Christopher") (male), Professor and Chair Department of Emergency Medicine and Bernard Lopez ("Lopez") (male), Associate Dean of Diversity and Inclusion and Associate Provost, Diversity and Community Engagement and Executive Vice Chair, Department of Emergency Medicine.

40.     As Emergency Physician, Plaintiff was responsible for providing acute care clinical services in the Thomas Jefferson University Hospital and the Methodist Hospital Division Emergency Departments, overseeing Physician Assistants working in the Fast Track area of the Emergency Departments, and, supervising and overseeing resident physicians in training in the Emergency Departments. In addition, Plaintiff was responsible for teaching medical students and resident physicians clinical medicine at the bedside and through lectures and clinical skills labs. Plaintiff was also required to engage in academic pursuits, including scholarly activity such as research and publication.

41.     At all times material hereto, Plaintiff was the second longest serving, female clinician reporting to Christopher.

42.     Defendants' had an underrepresentation of female employees in the Department of Emergency Medicine, particularly in high-ranking or leadership positions. By way of example, and without limitation, all Vice Chairs in the Department of Emergency Medicine were male.

8

43.     Defendants treated Plaintiff and other female physicians less favorably than male physicians in the Department of Emergency Medicine were treated. For example, and without limitation, Plaintiff and other female physicians were routinely assigned less desirable shifts and longer working hours than male physicians were assigned.

44.     On or about February 4, 2016, Plaintiff told both Karen Novielli ("Novielli") (female), Vice Provost and Vice Dean, Faculty Affairs and Professional Development and Christopher that she wanted to be promoted to Associate Clinical Professor, non-tenure track with the goal of later obtaining a tenure-track promotion.

45.     Novielli told Plaintiff she met the criteria for the non-tenure track promotion and had a positive "regional reputation."

46.     Christopher told Plaintiff he would write a letter of support on Plaintiff's behalf. The letter from Christopher was required for Plaintiff to be promoted.

47.     On April 14, 2016, Plaintiff met with Christopher, Lopez and Timothy Sullivan ("Sullivan") (male), Administrator to discuss Defendants' failure to effectuate a salary increase that Defendants had promised to her several months prior.

48.     Plaintiff provided Defendants with information about her work and academic activities and told Christopher, Lopez and Sullivan that she was not being compensated fairly for her efforts.

49.     During the meeting, Christopher acknowledged that Plaintiff met the criteria/credentialing requirements for her to be promoted.

50.     An increase in salary was part of promotion within Defendants' organization.

9

51.     Defendants did not take any steps to address Plaintiff's concerns about her compensation in connection with the breadth, scope and quality of her work.

52.     On April 22, 2016, in an email to Karen Novielli ("Novielli") (female), Vice Provost and Vice Dean, Faculty Affairs and Professional Development, Plaintiff complained of sex discrimination on behalf of herself and other female physicians.

53.     In the email, Plaintiff asked for clarification on Defendants' compensation plan, the lack of support she was receiving from her department generally and in connection with promotion and stated that she felt that "women such as myself are being discouraged from academic pursuits and herded toward a purely clinical career as a result of a formula that equates our worth highly to the quantity of our patient care."

54.     To the best of Plaintiff's knowledge, Defendants did not conduct any investigation into Plaintiff's complaint of sex discrimination.

55.     On or about June 27, 2016, Plaintiff learned that Christopher failed to provide a letter from the Department of Emergency Medicine in support of the promotion for Plaintiff despite his assurance that he would do so.

56.     Christopher told Plaintiff that it was his secretary's fault that a letter was not submitted.

57.     At the same time, Plaintiff learned that even if she was promoted despite Christopher's untimely letter, she would not receive the standard increase in salary associated with promotion. Instead, she was told that it would take a year for her salary increase to be effective.

10

58.     To the best of Plaintiff's knowledge, male physicians who were promoted were not required to wait a year for the associated salary increase to take effect.

59.     Defendants stated reasons for refusing to increase Plaintiff's salary with promotion was that it was "not in the budget" and the fact that the Christopher's letter supporting her promotion was submitted "too late" for the salary increase to take effective contemporaneously with her promotion.

60.     On or about December 23, 2016, Plaintiff, in an email, to Christopher, Lopez, Sullivan and Frederick Randolph ("Randolph") (male), Vice Chair of Clinical Operations, complained of sex discrimination.

61.     Plaintiff's email stated, "For hard-working women, its [sic] not the rigors of the work or the pay that makes a difference, but the perception of fairness and a good working environment with colleagues you respect and who treat you the same… Enticing women is one thing—keeping women is another."

62.     On or about March 28, 2017, Plaintiff learned that Defendants' Board voted to promote her to Clinical Associate Professor.

63.     She did not receive an increase in pay upon her promotion.

64.     On or about May 9, 2017, in a meeting with Christopher and Sullivan, Plaintiff complained of sex discrimination on behalf of herself and other female physicians in connection with the grueling scheduling she was given by Defendants, without limitation, and the related impact on her health.

65.     During the meeting, Sullivan stated, "I'm so sick of everyone always complaining about how women have it worse."

11

66.     In response, Christopher told Plaintiff that she was ungrateful and "never" says thank you.

67.     On or about July 18, 2017, Lopez made a presentation to the faculty detailing Defendants' ranks of female faculty hired since January, 2017. In response, during the related discussion, Plaintiff stated that Defendants had an underrepresentation of female faculty, female physicians were given undesirable shifts at a greater rate than male physicians and that her department loses female doctors at a greater rate than it loses male doctors amid the disparate treatment of female physicians.

68.     On or about January 30, 2018, Christopher and Lopez told Plaintiff that Defendants would not renew her contract and her employment would be terminated at the end of her existing contract, one year later on January 31, 2019.

69.     Prior to the meeting with Christopher and Lopez, Plaintiff had no indication that her job was in jeopardy.

70.     Defendants stated reason for Plaintiff's termination was that she is not "a good fit." Further, Lopez and Christopher told Plaintiff she was not "happy" and would "never be happy."

71.     Plaintiff asked Christopher and Lopez to clarify the reasons for her termination and they refused.

72.     Following her notice of termination, but while she was still employed by Defendants on or about March 19, 2018, Plaintiff told Novielli that she was treated differently than male physicians, for example, when she communicates in a direct manner she is criticized, but when male physicians communicate in the same manner, it is often praised and not criticized.

73.      Plaintiff observed Defendants fail to promote and/or push out other female physicians during her employment.

74.      On or about August 31, 2018, Plaintiff notified Defendants that she had filed a complaint with the PHRC alleging sex discrimination and retaliation for her complaints of same by Defendants.

75.      Defendants continued to discriminate and retaliate against Plaintiff, including, without limitation by: assigning her more overtime hours and undesirable overtime shifts; failing to credit her for time spent working on a federal grant that was awarded to Defendants as a result of Plaintiff's work; and, removing files related to Plaintiff's work and for which she was responsible from their usual location.  Defendants refused to tell Plaintiff what happened to the files. Defendants' actions with the files made Plaintiff vulnerable to allegations that she was not complying with IRB policy or preserving patient confidentiality.

76.      Amid the above treatment, Plaintiff told Christopher, Lopez, Novielli and Cherise Long ("Long") (female), Human Resources Representative that Defendants were retaliating against her for filing a complaint with the PHRC.

77.      On or about October 30, 2018, Plaintiff applied for a Faculty Position in Population Health Research for Defendants.

78.      Plaintiff was qualified for the position.

79.      Plaintiff was not hired for the position.

80.      Plaintiff later learned that Defendants' human resources "vetted" her application and did not pass it along to the hiring manager for the position.

13

81.     As the retaliatory and discriminatory conduct of Defendants continued, Plaintiff required medical leave/FMLA leave beginning on or about November 23, 2018 as she was experiencing stress, anxiety and depression resulting from Defendants' conduct.

82.     Plaintiff was approved for FMLA leave.

83.     While she was on medical leave, Defendants told Plaintiff that she would be prohibited in the future from serving as a faculty advisor despite student requests that she serve as their faculty advisor and ordered to tell students that she could not advise them.

84.     At or around the same time, while she remained out of work on medical leave, Defendants continued to communicate criticism to Plaintiff about her work performance and ask her to perform work while on medical leave.

85.     Plaintiff complained that Defendants were failing to comply with the terms of her medical leave and continuing to retaliate against her for her complaints of sex discrimination.

86.     Plaintiff returned from medical leave on January 2, 2019.

87.     On or about January 16, 2019, Gerald Wydro ("Wydro") (male), Chair, Department of Emergency Medicine, Aria—Jefferson Health, asked Plaintiff if she would be interested in working for him within Defendants' organization, albeit in a different capacity and in a different Emergency Department.

88.     Plaintiff agreed, sent Wydro her resume and met with him in person for an interview on February 11, 2019.

89.     On or about the next day, Wydro told Plaintiff that Christopher had called Wydro and told him that any effort by Wydro to hire Plaintiff would be "blocked." Wydro further told

Plaintiff that after the conversation with Christopher, he understood that Defendants had blocked her from ever working within Defendants' health system again.

90.    On or about January 29, 2019, Defendants told Plaintiff she would not, despite an earlier agreement, be retained as a consultant to continue to work on a $586,000 grant that Plaintiff developed, proposed and secured for Defendants from the Department of Labor.

91.    Plaintiff's employment was terminated, effective January 31, 2019.

92.    Following her termination, Plaintiff was contacted by the acting Dean and Program Director of Defendants' Population Health Program who wanted to create a position for Plaintiff to oversee Defendants' MD-MPH program.

93.    Ultimately, Plaintiff did not receive the position and was told that the decision not to hire her or create the position came "from higher powers."

94.    Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory treatment of Plaintiff, including without limitation, in connection with the hostile work environment to which she was subjected, her disparate pay, her termination, and Defendants' failure to hire Plaintiff.

95.    Plaintiffs' complaining of discrimination and retaliation was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff, including without limitation, in connection with the hostile work environment to which she was subjected, her disparate pay, her termination, and Defendants' failure to hire Plaintiff.

96.    The Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

15

97.      The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

98.      The discriminatory and retaliatory conduct of the Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

99.      The Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights.

100.      The conduct of the Defendants, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against the Defendants.

101.      Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

102.      No previous application has been made for the relief requested herein.

## COUNT I—TITLE VII

103.      Plaintiff incorporates herein by reference paragraphs 1 through 102 above, as if set forth herein in their entirety.

104.      By committing the foregoing acts of discrimination and retaliation against Plaintiff, the  Defendants have violated Title VII.

16

105.     The Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

106.     As a direct and proximate result of the Defendants' violation of Title VII, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

107.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

108.     No previous application has been made for the relief requested herein.

## COUNT II—FMLA

109.     Plaintiff incorporates by reference paragraphs 1 through 108 of this Complaint as if fully set forth in their entirety.

110.     By committing the foregoing acts against Plaintiff, Defendants have violated the FMLA.

111.     Defendants' conduct was retaliatory and/or interfered, restrained and/or denied the exercise of Plaintiff's rights to FMLA leave.

112.     Said violations were not in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

113.     The imposition of liquidated damages is warranted.

114.     As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

115.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's violations of the FMLA unless this Court grants the relief requested herein.

116.    No previous application has been made for the relief requested herein.

## COUNT III—PHRA

117.    Plaintiff incorporates herein by reference paragraphs 1 through 116 above, as if set forth herein in their entirety.

118.    The Defendants, by the above improper and discriminatory acts, have violated the PHRA.

119.    Said violations were intentional and willful.

120.    As a direct and proximate result of the Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

121.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of the Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

122.    No previous application has been made for the relief requested herein.

## COUNT IV—PFPO

123.    Plaintiff incorporates herein by reference paragraphs 1 through 122 above, as if set forth herein in their entirety.

124.    By committing the foregoing acts of discrimination against Plaintiff, Defendants have violated the PFPO.

18

125.     Defendants acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

126.     As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

127.     Plaintiff is now suffering and will continue to suffer the irreparable injury and monetary damages as a result of Defendants' discriminatory, retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

128.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)  declaring the acts and practices complained of herein to be in violation of Title VII;

(b)  declaring the acts and practices complained of herein to be in violation of the FMLA;

(c)  declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)  declaring the acts and practices complained of herein to be in violation of the PFPO;

(e)  enjoining and permanently restraining the violations alleged herein;

(f)  entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

19

(g) awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(h) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(i) awarding punitive damages to Plaintiff;

(j) awarding liquidated damages to Plaintiff;

(k) awarding Plaintiff other such damages as are appropriate under Title VII, the FMLA, the PHRA, and the PFPO;

(l) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(m) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: January 7, 2020

BY: _____
Stephen G. Console, Esquire (36656)
Katherine C. Oeltjen, Esquire (318037)
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(215) 545-7676
*Attorneys for Plaintiff Priya E. Mammen*

20

# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

### COMPLAINT

COMPLAINANT:                                    :

**PRIYA E. MAMMEN**                             :            Docket No. *201800348*

v.                                              :

RESPONDENTS:                                    :

**THOMAS JEFFERSON UNIVERSITY**                 :

and                                             :

**SIDNEY KIMMEL MEDICAL COLLEGE**               :

and                                             :

**THOMAS JEFFERSON UNIVERSITY
HOSPITAL**                                      :

and                                             :

**JEFFERSON UNIVERSITY PHYSICIANS**             :

1. The Complainant herein is:

    Name:        Priya E. Mammen

    Address:     **REDACTED**
                 Philadelphia, PA 19147

2. The Respondents herein are:

    Names:       Thomas Jefferson University; Sidney Kimmel Medical College; Thomas
                 Jefferson University Hospital; Jefferson University Physicians

    Address:     1020 Sansom Street
                 Philadelphia, PA 19107

3.  I, <u>Priya E. Mammen</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and retaliation because of my complaints of sex discrimination, as set forth below:

### Discrimination and Retaliation

A.  I specifically allege:

[1]      I began working at Respondents on or about August 25, 2012.  I consistently perform my job duties in a highly competent manner and receive positive feedback.

[2]      I hold the position of Emergency Physician, Clinical Associate Professor, Director of Public Health Programs in the Department of Emergency Medicine.

[3]      I report to Theodore Christopher (male), Professor and Chair, Department of Emergency Medicine, and Bernard Lopez (male), Associate Dean of Diversity and Inclusion and Associate Provost, Diversity and Community Engagement, and Executive Vice Chair, Department of Emergency Medicine.

[4]      I am the second longest-serving female Clinical Physician reporting to Christopher.

[5]      Respondents have an underrepresentation of female employees, particularly female employees in higher-ranking positions.  For example, all of the Vice Chairs in the Department of Emergency Medicine are male.

[6]      Respondents treat me differently, and in a more dismissive manner, than they treat male and/or noncomplaining employees.

[7]      Respondents gave female Physicians, including me, less desirable shifts and longer work hours than they gave male employees.

[8]     On April 14, 2016, I met with Christopher, Lopez, and Timothy Sullivan (male), Administrator. I stated that I met the criteria for promotion to Clinical Associate Professor, despite having been advised by Lopez that I had one to two more years before being eligible for promotion. I was told that certain of my work did not count toward my academic promotion and compensation criteria. Sullivan later told me that I was "one of a small handful" of employees who was not slated to get a salary increase under the new compensation plan.

[9]     On April 22, 2016, in an email to Karen Novielli (female), Vice Provost and Vice Dean, Faculty Affairs and Professional Development, I complained of sex discrimination. I asked for clarification on the compensation plan and the lack of support I was receiving, and complained that I felt that "women such as myself are being discouraged from academic pursuits and herded towards a purely clinical career as a result of a formula that equates our worth highly to the quantity of our patient care."

[10]     Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[11]     On June 27, 2016, I learned that no letter of support for my promotion was submitted by the Department on my behalf. I had understood that Christopher agreed to submit a letter supporting my promotion. Respondents offered no explanation for failing to submit a letter supporting my promotion. I also learned that any pay increase associated with my promotion would not happen until July 2017. The stated reason for the one year delay in my salary increase was that it was not in the budget and that any letter supporting my promotion would be submitted too late for the salary increase to take effect that year.

[12]     On December 23, 2016, in an email to Christopher, Lopez, Sullivan, and Frederick Randolph (male), Vice Chair of Clinical Operations, I complained of sex

discrimination. I complained: "For hard-working women, its [sic] not the rigors of the work or the pay that makes a difference, but the perception of fairness and a good working environment with colleagues you respect and who treat you the same. . . . Enticing women is one thing – keeping women is another."

[13]     Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[14]     On or about March 28, 2017, I learned that the Board voted to promote me to Clinical Associate Professor.

[15]     On or about May 9, 2017, in a meeting with Christopher, I complained of sex discrimination. I complained that female employees are more penalized than male employees at Respondents. Christopher accused me of being critical and ungrateful.

[16]     Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[17]     On or about July 18, 2017, during a faculty meeting, I complained of sex discrimination. Lopez presented on the number of female employees that Respondents hired into the Department since January 2017. I complained that, in the Department, there has been a low number of female faculty, female employees have worked more undesirable shifts, and the Department loses female employees at a greater rate than it loses male employees.

[18]     Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[19]     On January 31, 2018, in a meeting with Christopher and Lopez, Respondents notified me that they would not be renewing my contract, and terminating my

employment, effective January 31, 2019.  I was blindsided.  Before the meeting, I had no indication that my job was in jeopardy.

[20]     The stated reason for terminating my employment was that I am not a good fit.  When I asked what that meant, I was told that I am not happy and that I will never be happy.  When I asked for further clarification, Christopher stated that he would not go into detail about it; Lopez stated that there would be no discussion about it.  Christopher stated that it was up to me to decide if I will handle this in a professional manner.

[21]     The stated reason for terminating my employment is pretext.  Respondents terminated my employment because of my sex and/or complaints of sex discrimination.

[22]     Respondents did not provide me with an opportunity to remedy any allegedly deficient performance or procedures before notifying me that they are terminating my employment.

[23]     I had no disciplinary or performance issues throughout my employment with Respondents.

[24]     To my knowledge, I am the only employee reporting to Christopher and Lopez that will be terminated effective January 31, 2019.

[25]     On or about March 19, 2018, in a meeting with Novielli, I complained of sex discrimination.  I complained that I am treated differently than male employees—that when I communicate in a blunt manner, I am criticized, but when male employee communicate in a blunt manner, it is acceptable.  Novielli responded that the way I communicate is important.

[26]     Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[27]     Respondents will assign portions of my job duties to male employees in the Department. I am more qualified and experienced to perform my position than the noncomplaining male employees who will take over a portions of my job duties.

[28]     Respondents failed to provide any explanation, including the selection criteria, as to why I am being terminated and the noncomplaining male employees are being retained.

[29]     Respondents failed to take any action to remedy or prevent the sex discrimination and/or retaliation against me.

[30]     Respondents' comments and conduct evidence a bias against female employees.

[31]     Respondents recently failed to promote and pushed out other female employees.

[32]     Respondents' conduct toward me has caused me emotional distress.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and retaliated against because of my complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

   **X**     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d)**

_____ Section 5.1 Subsection(s) _____

_____ Section 5.2 Subsection(s) _____

_____ Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    **X**    **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant prays that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.


_7/26/18_____
(Date Signed)

_____   _Priya E. Mammen_____
(Signature)   Priya E. Mammen.
REDACTED
Philadelphia, PA 19147

# EXHIBIT 2

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## SECOND COMPLAINT

COMPLAINANT:                          :

**PRIYA E. MAMMEN**                   :          Docket No. 201800348

v.                                    :

RESPONDENTS:                          :

**THOMAS JEFFERSON UNIVERSITY**       :

and                                   :

**SIDNEY KIMMEL MEDICAL COLLEGE**     :

and                                   :

**THOMAS JEFFERSON UNIVERSITY
HOSPITAL**                            :

and                                   :

**JEFFERSON UNIVERSITY PHYSICIANS**   :

and                                   :

**JEFFERSON HEALTH**                  :

1. The Complainant herein is:

   Name:      Priya E. Mammen

   Address:   REDACTED
              Philadelphia, PA 19147

2. The Respondents herein are:

Names:      Thomas Jefferson University; Sidney Kimmel Medical College; Thomas
            Jefferson University Hospital; Jefferson University Physicians; Jefferson
            Health

Address:    1020 Sansom Street
            Philadelphia, PA 19107

3. I, Priya E. Mammen, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and retaliation because of my complaints of sex

discrimination, as set forth below:

## Discrimination and Retaliation

A. **I specifically allege, in addition to that set forth in my first Complaint,**
   **including, but not limited to, the following, all of which has occurred since**
   **filing my first Complaint:**

   [1]         On August 31, 2018, I informed Respondents—including Theodore

Christopher (male), Professor and Chair, Department of Emergency Medicine, Bernard Lopez

(male), Associate Dean of Diversity and Inclusion and Associate Provost, Diversity and

Community Engagement, and Executive Vice Chair, Department of Emergency Medicine, Karen

Novielli (female), Vice Provost and Vice Dean, Faculty Affairs and Professional Development,

and Cherise Long (female), Human Resources Representative—that I filed a Complaint with the

PHRC.

   [2]         On October 17, 2018, in an email to Christopher (male), Lopez (male),

Novielli (female), and Long (female), I complained of retaliation.  I complained that certain

actions were being taken against me because I filed a PHRC Complaint alleging sex

discrimination and retaliation.  The actions of which I complained included the following: having

confidential files for which I was responsible removed from a locked office and transported

elsewhere without my knowledge or authorization, despite having requested that these files not be moved without first coordinating with me; being assigned more overtime hours, and more undesirable overtime hours, than I was assigned before having filed my PHRC Complaint; and not being credited the time that I worked on a federal grant that was awarded to Respondents through my efforts.

[3]     On October 18, 2018, in an email from Novielli (female), I was told that there was "no reason to believe that the events were retaliation for [my] PHRC complaint."

[4]     Respondents failed to take action to remedy or prevent the sex discrimination and/or retaliation against me.

[5]     On October 23, 2018, in a meeting, Christopher (male) stated that, at a conference he was at recently, the "women speakers were all promoting themselves like a business."

[6]     On or about October 30, 2018, I applied for a Faculty Position in Population Health Research at Respondents.  I was qualified for the position.

[7]     I have not received any response to my application.

[8]     The position remains open.

[9]     Respondents failed to hire me, or even interview me, for the position for which I was qualified and had applied.

[10]     Respondents failed to hire me, or even interview me, for the position for which I was qualified and had applied because of my sex and/or my complaints of sex discrimination.

[11]     On or about November 23, 2018, I went out on a medical leave of absence, due to stress, anxiety, and depression resulting from the sex discrimination and retaliation to which I have been subjected at Respondents.

[12]     On December 20, 2018, in an email from Sullivan (male) while I was on a medical leave of absence, following a request by students to have me serve as a faculty advisor, I was instructed to "advise the students involved in organizing the [new student] group and the office of student life, at [my] earliest opportunity, that [I] will not be able to serve as the group's advisor" and that, if I "refuse[d] for some reason to withdraw as the potential advisor, [Respondents] will have no option but to reject the student group on the basis of [my] impending departure."

[13]     On December 21, 2018, in an email from Sullivan (male) while I was on a medical leave of absence, I was criticized for not completing patient charts, despite being out of work on a medical leave of absence.

[14]     On December 24, 2018, in an email to Sullivan (male), I complained of sex discrimination and retaliation.  I complained: "I have shared with you many times the impact [Respondents'] decision to not renew my contract has had on me - a decision that seemed not to consider my contributions to the Department or Institution, but instead focused on halting my advancement as a woman. . . . I have had specific discussions with leadership in the Department about the strong recommendations for medical leave from my physicians and health care providers, specifically with you and Dr. Randolph. . . . As I outlined above, my inability to complete my charts contemporaneously was a result of the significant emotional distress I was experiencing after Jefferson notified me of termination, based on my sex and my complaints of sex discrimination."

[15]      Respondents failed to take action to remedy or prevent the sex discrimination and/or retaliation against me.

[16]      On December 27, 2018, in an email from Sullivan (male) while I was on a medical leave of absence, I was criticized for not completing patient charts, despite being out of work on a medical leave of absence, and criticized for not taking my medical leave of absence through the appropriate process.

[17]      On December 29, 2018, in an email to Sullivan (male), I stated the following: "For the specifics of my medical leave, I followed the recommendations of my physicians and treatment providers. I discussed in detail with CIGNA after first discussing with my designated HR Business Partner. I was, and am, approved for FMLA and short term disability. . . . You have had the vantage of seeing my work ethic and work products by nature of what I have always considered a close working relationship and the geographic proximity of our offices. Consequently, you could attest, just as my annual reviews have reported, that I meet all my work responsibilities. I have consistently done this throughout my employment. Despite all of this, I am being criticized, invalidated, and terminated - which I believe is because I am female and have complained of sex discrimination."

[18]      Respondents failed to take action to remedy or prevent the sex discrimination and/or retaliation against me.

[19]      On January 2, 2019, I returned to work from my medical leave of absence.

[20]      On January 16, 2019, Gerald Wydro (male), Chair, Department of Emergency Medicine, Aria – Jefferson Health, upon learning that I would not be employed with Respondents after January 31, 2019, asked me if I wanted to work with him at Respondents in a different capacity.  I stated that I did, and I sent him my resume.

[21]     On January 29, 2019, I was told that Respondents would not, as previously discussed, retain me as a consultant to continue my work on the $586,000 grant I developed, proposed, and secured for Respondents from the Department of Labor, effective July 1, 2018.

[22]     Respondents failed to retain me as a consultant because of my sex and/or my complaints of sex discrimination.

[23]     Instead of me, Respondents appointed Dimitrios Papanagnou (male), Vice Chair of Education and Assistant Dean of Faculty Development, to lead work on the grant that I had developed and secured for Respondents.  I am more qualified to lead work on the grant than the male employee that Respondents appointed.

[24]     On January 31, 2019, Respondents terminated my employment.

[25]     Respondents terminated my employment because of my sex and/or my complaints of sex discrimination.

[26]     On February 12, 2019, in a phone call with Wydro (male), I was told that Wydro (male) had called Christopher (male) about me, and that Christopher stated that any attempt to hire me at Respondents would be blocked.  Wydro (male) told me that Christopher (male) sounded as though he was reading from a prepared statement, and that Christopher (male) stated that he had suggested to Respondents that I never be hired back into Respondents' system.  Wydro (male) stated that Christopher (male) refused to tell him why I was terminated from Respondents but stated that I would not be hired back into Respondents' system.

[27]     Respondents failed to hire me because of my sex and/or my complaints of sex discrimination.

[28]     On or about February 22, 2019, I applied for a Faculty Position in Population Health Research at Respondents.  I was qualified for the position.

[29]      I have not received any response to my application.

[30]      The position remains open.

[31]      Respondents failed to hire me, or even interview me, for the position for which I was qualified and had applied.

[32]      Respondents failed to hire me, or even interview me, for the position for which I was qualified and had applied because of my sex and/or my complaints of sex discrimination.

[33]      Respondents failed to take any action to remedy or prevent the sex discrimination and/or retaliation against me.

[34]      Respondents' comments and conduct evidence a bias against female and/or complaining employees.

[35]      Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and retaliated against because of my complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

   **X**      **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): __(a); (d)__**

____    Section 5.1 Subsection(s) _____

____    Section 5.2 Subsection(s) _____

____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the
Complainant in any court or before any other commission within the Commonwealth of
Pennsylvania as follows:

   **X**    **This charge will be referred to the EEOC for the purpose of dual
filing.**

6.    The Complainant seeks that Respondents be required to:

   (a) Make the Complainant whole.

   (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

   (c) Remedy the discriminatory and retaliatory effect of past practice(s) and
       procedure(s).

   (d) Take further affirmative action necessary and appropriate to remedy the violation
       complained of herein.

   (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

___3/1/19___
(Date Signed)

_____  Priya E. Mammen
(Signature)
REDACTED
Philadelphia, PA 19147

# EXHIBIT 3

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Priya E. Mammen<br>REDACTED<br>Philadelphia, PA 19147 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 17F-2019-60154 | **Kurt Jung,**<br>**State, Local and Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*                          10/9/2019

**Jamie R. Williamson,**            *(Date Mailed)*
**District Director**

Enclosures(s)

cc:     **Katherine C. Oeltjen Esq.**
        **(Charging Party Attorney)**

        **Thomas Jefferson University Hospitals, Inc.**
        **E. Jane Hix Esq.**
        **(Respondent Attorney)**

cc:     *(Sent by e-mail only: oeltjen@consolelaw.com; e.hix@jefferson.edu)*

**Katherine C. Oeltjen Esq.**
**Console Mattiacci**
**2047 Locust Street, 9th floor**
**Philadlephia, PA 19102**
**oeltjen@consolelaw.com**

**E. Jane Hix Esq.**
**Thomas Jefferson University Hospitals, Inc.**
**925 Chestnut Street, Suite 310**
**Philadelphia, PA 19107**
**e.hix@jefferson.edu**