IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRIYA E. MAMMEN, M.D., M.P.H., **Plaintiff,** | CIVIL ACTION |
| v. | |
| THOMAS JEFFERSON UNIVERSITY, JEFFERSON UNIVERSITY PHYSICIANS, THOMAS JEFFERSON UNIVERSITY HOSPITAL AND SIDNEY KIMMEL MEDICAL COLLEGE, **Defendants.** | NO. 20-0127 |

## OPINION

In this employment discrimination dispute, Plaintiff Priya E. Mammen, M.D., M.P.H., moves to compel Defendants Thomas Jefferson University, Jefferson University Physicians, Thomas Jefferson University Hospital, and Sidney Kimmel Medical College (collectively, "Defendants") to produce all documents relating to complaints and investigations of sex discrimination within Defendants' Department of Emergency Medicine. Mammen also moves for the reasonable expenses and attorneys' fees she incurred in filing this motion.

I.    BACKGROUND

Mammen is an emergency room physician who focuses her work on matters of public health. For years, she worked as a teaching physician within Defendants' Department of Emergency Medicine (the "Department"). During her tenure, Mammen complained repeatedly to Department leadership—specifically, Dr. Ted Christopher, the Department's Chair; Dr. Bernard Lopez, the Department's Associate Provost of Diversity & Inclusion; and Dr. Karen Novielli, the Department's Vice Provost—of gender-related issues on behalf of herself and other female emergency medicine physicians. The record suggests that she performed her work admirably; nevertheless, in 2018, the Department decided not to renew her contract. Department

leadership's reason for this decision: Mammen was "not happy." In 2020, she filed this discrimination action.

Shortly thereafter, Mammen served Defendants with written discovery requests. Through Document Request Nos. 17 and 18, Plaintiff sought any documents relating to complaints of sex discrimination (formal or informal) made by any current or former employee of Defendants from August 1, 2012 though the present time and any documents relating to any investigation resulting from such complaints. In response, Defendants asserted that they were "not aware of any relevant and discoverable documents reflecting charges or complaints of gender discrimination in the Department of Emergency Medicine from 2015 to the present" but reserved their right to supplement their responses. They did not supplement their responses during the discovery period and have not done so since.

Mammen now alleges that, in the last several weeks, she has learned from former colleagues that during the discovery period—and perhaps even before she filed her Complaint—Defendants were in receipt of multiple complaints of sex discrimination toward female physicians in the Department. She offers a June 16, 2020 email from Dr. Aditi Joshi to Novielli, Christopher, and Lopez titled "EM and gender equity failure." It reads:

> Hello all,
>
> I want to first say how frustrating it is that I have yet again, to write an email outlining the microaggressions and bias that is running rampant in our department. This is the last thing I want to keep having to do however it seems we are sliding back to a year ago.
>
> Today's faculty meeting had a number of them. Liz's research summary was ignored. Jen's contributions to operations were credited to someone/everyone else. However I will not speak for them but the way they are treated is similar to what I will outline. I am going to speak about my experience.
>
> I have been clear over and over about the biases that allow men to take credit for women's work. I have also told you clearly how it has been affecting me negatively

professionally. I was ensured and told within this forum that I was heard and listened to and steps were being taken.

Imagine my surprise when today's credit by our EM chairman to all things telehealth, telehealth due to COVID was yet again given all to Judd. There was no mention of me at all. There are a few large concerns here:

1. **Women being made invisible:** I have spoken before and there is research pointing out that mid-career academic women are relegated to only workers while the males around them get credit for their work, get notoriety, while the women do the work and get an occasional pat on the head. I was shocked today when it happened again.

2. **I have brought this up before.** I was told again and again that this department has decided that gender equity is something you are striving for. That the way I have been treated is unacceptable. However, it is clear that if I do not constantly say something, this department does nothing. As evidenced today, it is clear that unless I constantly remind about it, we slide back to giving men all the power in the department and let women be invisible. Which brings me to my third point.

3. **This should not be on me to remind you.** You have said you want a better, more equitable department. What are you doing to ensure this? When this happened today where were the other leaders who could have stepped in to remind you? Where was Judd, Dimitri, Fred? It is clear they are not invested and will not step up to help us forcing the women to advocate for ourselves to absolute futility.

4. **I will be punished:** As a female and person of color, we are often told we are whining, we are making stuff up. That today was a 'throwaway comment' and that Dr. Joshi 'complains too much'. Today's 'throwaway comment' was in a public forum of our faculty meeting. That 'throwaway comment' will go in our faculty minutes. That 'throwaway comment' will be repeated, likely at the large leaders meeting, ensuring that men will continue to move forward while women will be left behind without advocates. I also fully expect you all to ignore me eventually for 'speaking up too much'. That I should be happy with what I get and never want to equitable respect and promotion. However, if I don't, it seems no one will. I have stated before I expect retaliation that will force me to leave Jefferson.

5. **People are noticing.** I received six different reachouts from outrage to apathy on the way the men of our department are failing us. As I outlined in a previous email, a number of junior faculty women stated 'if you and Jen cannot succeed here, no woman can'. Read that again. It is telling. And we are failing to get any headway and respect.

. . .

3

> I am well aware we are all learning and today may have been a misstep. However, we had not one other person who was there to ensure this bias was noted. Not one male leader stepped up to do that to correct that misstep so we all get better. Not one. This department has not changed a bit.

Joshi's "observations of disparities" prompted the Department to interview "over twenty" of its faculty and staff, with some faculty opining "that gender appeared to play a role in how decisions were made in the Department."

The email was never produced. Nor did Defendants produce any documents relating to the Department's faculty interviews. Three months after receiving Joshi's email, Novielli was expressly asked at her deposition whether Joshi had voiced any concerns about how women were treated in the Department. Novielli responded, "I don't recall."

Defendants filed for summary judgment a few months later. In their briefing, they argued that Mammen's discrimination claims should be dismissed, because she failed to produce evidence supporting "an 'objective and reasonable' belief of gender disparity" within the Department. Defendants' motion was granted in part and denied and in part, and the case is slated for trial later this year.

## II.   DISCUSSION

Federal Rule of Civil Procedure 37(a) provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a). The Rule also provides that if the motion is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the nondisclosure "was

substantially justified" or where "other circumstances make an award of expenses unjust."[1] Fed. R. Civ. P. 37(a)(5)(A).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). At the discovery stage, relevance is liberally construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Rule 26(e) imposes an affirmative obligation on the producing party to supplement its discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

In this case, Mammen made the following discovery requests:

17. All documents that refer to, relate to, or evidence any charges, accusations or complaints (both formal and informal, internal or external) of sex discrimination made by any employee or former employee of Defendants from August 1, 2012 through the present time.

18. All documents that refer to, relate to, or evidence any investigation undertaken by Defendants (or someone on Defendants' behalf or at Defendants' request) regarding any charges, accusations or complaints (both formal and informal, internal or external) of sex discrimination made by any employee or former employee of Defendants from August 1, 2012 through the present time.

Defendants responded that "other than documents reflecting Plaintiff's allegations, [they were] not aware of any relevant and discoverable documents reflecting charges or complaints of gender discrimination in the [Department] from 2015 to the present." In responding to this motion, Defendants reiterate this position. They argue that they were not required to produce Joshi's

---

[1] The advisory committee notes to Rule 37 indicate that the "opportunity to be heard" requirement can be satisfied by either written submissions or oral hearings. *See* Fed. R. Civ. P. advisory committee's note.

5

email or any similar documents because the email "cannot be considered relevant to this instant matter nor is it a 'complaint of gender discrimination' in any meaningful way."

Let's cut to the chase: Defendants are wrong. Joshi's email—and any similar communications that Defendants may have in their possession—is responsive to the above discovery requests and relevant to this matter, as are documents relating to the departmental investigation provoked by that email. These documents should have been produced.

Defendants' arguments to the contrary are meritless. To the extent Defendants contend that Joshi's email does not constitute an "accusation" or "complaint," the substance of the email suggests otherwise. Indeed, Joshi is clearly complaining about *something*. Defendants argue, however, that this "something" cannot reasonably be interpreted as gender discrimination. Given its normal definition, "to discriminate" means "to make a difference in treatment or favor on a basis other than individual merit." *Discriminate*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/discriminate. Consistent with its ordinary meaning, the Supreme Court has defined "discrimination" as "being subjected to differential treatment." *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); *Olmstead v. L.C.*, 527 U.S. 581, 614 (1999) (Kennedy, J., concurring) (the "normal definition of discrimination" is "differential treatment"). Joshi does not use the word "discrimination" in her email; nevertheless, what she complains of is discriminatory treatment.

Joshi complains that the Department fails to give female employees credit for their work, and instead allows male faculty to take credit for the work of female faculty. She contends that this practice is the product of "bias," and shares that it is having a negative effect on her professional career. She complains that the Department is failing in its efforts to achieve gender equity, that men have been given all the power in the Department at the expense of female

6

faculty.  She suggests that she will be denied "equitable respect and promotion" due to her gender.  She complains that she has raised these concerns before, and the Department refuses to act.  She states that she expects her present concerns to be ignored, or to be told that "[she] should be happy with what [she] get[s]."  She suggests that she and other qualified female faculty members are unable to succeed in the Department, while men advance.  With fervency, Joshi complains that men are being treated more favorably than women for non-merit-based reasons, and that her professional career is suffering for it.  What else could this email be, other than a complaint of discrimination based on sex?

Defendants cling to Joshi's use of the word "microaggressions," insisting that microaggressions—defined as comments or actions that "subtly and often unconsciously . . . express[] a prejudiced attitude toward a member of a marginalized group," *Microaggression*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/microaggression—do not constitute discrimination under the law.  But there is no need to explore the distinction between "microaggressions" and overt discrimination here.  Joshi expressly complains that "bias is running rampant in our department," and notes that while she has complained to the Department before about its failure to get women appropriate credit for their work, the Department "does nothing."  The substance of the email describes Joshi's belief that the Department is facilitating or at least turning a blind eye to a practice where men are given credit for work (including the work of female faculty) and women are not, resulting in male faculty advancing and female faculty being left behind.  This is, clearly, a complaint of differential treatment based on gender.

Defendants themselves seem to recognize this.  Nowhere in their briefing do they state that Joshi did not complain of differential treatment.  Rather, they state that Joshi did not complain of gender discrimination in any "legally identifiable" way; that her concerns cannot

7

"be elevated to a claim of 'discrimination'" under Title VII; that the behavior she complains of cannot be considered "'discriminatory' as a matter of law." In other words, they complain that, in their view, Joshi could not maintain a Title VII employment discrimination action based on her email and the conduct described therein. They argue that Joshi's email would not constitute "protected activity" under Title VII, and that her "subjective[]" perceptions of unfavorable treatment are speculative and unsupported—in other words, that the Department's differential treatment of men and women is all in her head. Defendants employed a similar strategy on summary judgment, arguing that just because Mammen individually perceived discriminatory treatment within the Department did not make it so. Here, however, we are not litigating whether Joshi could succeed on an employment discrimination claim against Defendants. The question is whether Joshi's email constitutes a complaint or accusation of sex discrimination, not whether Defendants understood her complaint to be legitimate or actionable under Title VII.

To the extent Defendants contend that Joshi's email "is not relevant to any issue in the instant matter," this argument is also unavailing. Again, relevant matter "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer*, 437 U.S. at 351. Joshi's complaint that the Department is failing in efforts at gender equity; that men are being allowed to take credit for her work to her professional detriment; and that she expects retaliation for speaking up is clearly relevant to the present dispute. To take just one example: Defendants argued in their summary judgment motion that their reason for terminating Mammen—that she was "unhappy"—was not pretext for unlawful discrimination. According to Defendants, what they meant when they said Mammen was "not happy" was that her career goals were incompatible with Defendants' universally-applied structures. Joshi's email, however, indicates that Defendants may in fact

equate a female faculty member's "happiness" with her readiness to concede to unfair treatment. Mammen, in building her case, was entitled to explore this and any similar evidence Defendants may have withheld.  *See, e.g.*, *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996) ("Courts today must be increasingly vigilant in their efforts to ensure that prohibited discrimination is not approved under the auspices of legitimate conduct, and 'a plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled . . . because of crabbed notions of relevance . . . .'" ).

With respect to documents related to the departmental interviews conducted in the wake of Joshi's email, Defendants deny that these interviews constituted an "investigation . . . regarding any charges, accusations or complaints (both formal and informal, internal or external) of sex discrimination."  Instead, they characterize these interviews as a "survey of employee satisfaction by an employer following an employee's criticism."  But they acknowledge that the interviews were prompted by Joshi's "criticism" and "observations of disparities," and the only "disparity" criticized in her email is the alleged unfair treatment of women within the Department.  Moreover, Defendants expressly note that some of the interviewees "opined that gender appeared to play a role in how decisions were made in the Department."

Defendants contend that a finding in Mammen's favor will "open a 'Pandora's box' in fundamentally expanding the type of behavior considered to be 'discriminatory' as a matter of law."  This language gives pause:  Pandora was, by Hesiod, the first woman, created by Zeus as punishment for Prometheus giving fire to mankind.  Men lived harmoniously with the gods prior to her creation, or so the story goes.  Then Pandora arrives with a large jar that she's told never to open.  But curiosity gets the better of her:  She opens the jar, and all evils and miseries are unleashed into the world.

9

Of course, Defendants are the masters of their own prose and so can be excused for the tone-deaf idiom. What cannot be excused—in this discovery context, at least—is their refusal to produce documents relevant to Mammen's discrimination claims. Under the well-established rules governing the discovery process, Mammen is entitled to the broad discovery of any nonprivileged documents relevant to her claims and proportional to the case. *See* Fed. R. Civ. P. 26(b)(1). Defendants do not suggest that Mammen's document requests are not proportional to the suit. *See id.* (proportionality determined by considering factors such as "the parties' relative access to relevant information" and "whether the burden or expense of the proposed discovery outweighs its likely benefit"). Complaints of gender discrimination within the Department, such as Joshi's email, are relevant to the subject matter of this Title VII litigation and should have been produced.

Defendants will therefore be ordered to produce all documents responsive to the above discovery requests. And because the documents presently sought by Mammen were clearly relevant to the instant matter, Defendants' nondisclosure was substantially unjustified, and they will be required to reimburse Mammen for her reasonable expenses and attorneys' fees incurred in making this motion. *See In re Atomica Design Grp., Inc.*, 591 B.R. 217, 234 (Bankr. E.D. Pa. 2018) ("Where withheld documents are clearly relevant and discoverable, parties are not substantially justified in failing to disclose them."); *see also Johnson v. Fed. Express Corp.*, 2014 WL 65761, at *1 (M.D. Pa. Jan. 8, 2014) ("Substantial justification for the failure to make a required disclosure means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'"). Mammen will be permitted to move for further relief upon her receipt and review of the documents proffered by Defendants.

An appropriate order follows.

**August 26, 2021**                                    **BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**